USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/06/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE ANNUITY, WELFARE AND APPRENTICESHIP
SKILL IMPROVEMENT & SAFETY FUNDS of the
INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 15, 15A, 15C, AND 15D,
AFL-CIO, by its TRUSTEES JAMES T. CALLAHAN,
FRANCIS P. DIMENNA, ROBERT SHAW and JOHN
BRUNETTI,

                Plaintiffs,

- against -

J & A CONCRETE CORP.,

                Defendant.

OPINION AND ORDER

12 Civ. 2241 (RLE)

## I. INTRODUCTION

The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C, and 15D, AFL-CIO, by its Trustees James T. Callahan, Francis P. Dimenna, Robert Shaw, and John Brunetti (collectively, "Plaintiffs"), initiated this action against J & A Concrete Corporation ("J & A"), pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 *et seq.* ("LMRA"), to compel J & A to pay fringe benefit contributions owed for the period of July 1, 2007, through June 30, 2009. Pending before the Court is Plaintiffs' Motion for Summary Judgment and request for damages in the amount of $57,266.54. For the reasons that follow, Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**.

## II. BACKGROUND

Plaintiffs commenced this action on March 27, 2012. (Complaint ("Compl.") at 1.) Plaintiffs assert that J & A failed to pay fringe benefit contributions owed to employee fringe benefit trust funds and breached the terms and conditions of the Parties' January 10, 1991 collective bargaining agreement ("CBA"). (Compl. at ¶¶ 1, 16.) J & A filed its Answer to the Complaint on April 23, 2012. (Answer ("Ans.") at 3.) On October 12, 2012, Plaintiffs filed for summary judgment asserting that there was no genuine issue as to any material fact and that Plaintiffs are entitled to judgment as a matter of law. (Plaintiffs' Notice of Motion for Summary Judgment ("Pl. Mot. for Sum. Judg.") at 1.)

J & A became a signatory to the CBA with the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("Local 15") on January 10, 1991. (Compl. at ¶ 16; *see also* Affidavit of James M. Steinberg in Support of Motion for Summary Judgment ("Steinberg Aff.") at 2, ¶ 5.) Under the agreement, J & A agreed to remit fringe benefit contributions to each of the Plaintiffs Local 15 Trust Funds for work performed by its employees falling under the jurisdiction of Local 15. (Steinberg Aff. at 2, ¶ 5; *see also* Plaintiffs' Exhibit C, ("Ex. C") at ¶ 4.) By entering into the CBA, J & A also became a signatory to the Trust Agreements establishing each of the Local 15 Trust Funds and became bound by the terms and conditions of the Trust Agreements. (Steinberg Aff. at 2, ¶ 5; *see also* Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 in Support of Motion for Summary Judgment. ("Pls. 56.1 Stat.") at 2, ¶ 4.)

With J & A's consent, along with the authority granted to Plaintiffs' Local 15 Trust Funds pursuant to the CBA and the Trust Agreements to perform an audit, Plaintiffs'

2

representative conducted an audit and reviewed J & A's payroll records on June 14, 2010. (Pls. 56.1 Stat. at 2, ¶ 5; Steinberg Aff. at 3, ¶ 6; Affidavit of Julia Willdelaforcade in Opposition to Motion for Summary Judgment ("Willdelaforcade Aff.") at 2, ¶ 6.) This audit resulted in the original November 16, 2010 report. (*Id.*) The November 16 report indicated that J & A owed $36,697 in stamps[1] to Local 15D employees. (*Id.* at 2-3, ¶ 9.) Plaintiffs issued a revised report on March 10, 2011, which reduced the claimed deficiency to $35,416. (*Id.* at 3, ¶ 10.) Plaintiffs issued a further revised report on November 16, 2011, which increased the amount due and owing to $43,331. (*Id.* at 3, ¶ 11.) The increase was caused by the inclusion of stamps due and owing to Local 15A employees as well as a newly reported "pension deficiency." (*Id.*) Finally, Plaintiffs issued their last revised report with their motion for summary judgment on October 12, 2012. (*Id.* at 3, ¶ 12.) The final report indicated a deficiency of $35,592 owed to 15A and 15D employees, including the pension deficiency. (*Id.*) Plaintiffs assert that the final revisions were made after Plaintiffs had an opportunity to review documents exchanged during discovery. (Steinberg Aff. at 3, ¶ 6; *see also* Affidavit of Vincent Quattalaro in Support of Plaintiffs' Motion for Summary Judgment ("Quattalaro Aff.") at 2, ¶ 3.)

Based on the final revised report, dated October 12, 2012, Plaintiffs indicate that J & A owes $41,866.00 in fringe benefit contributions and interest to Local 15 Trust Funds for the

---

[1] Contributing employers pre-purchase fringe benefit contributions in the form of stamps. (Affidavit of Patrick J. Keenan in Support of Plaintiffs' Motion for Summary Judgment ("Keenan Aff.") at 2-3, ¶ 4.) Stamps come in various denominations, including 1 hour, 8 hours, 40 hours, 0.5 overtime hours, and 1 overtime hour. (*Id.*) The audited hours identified in the reports are the payroll hours obtained by Plaintiffs' auditor from J & A's payroll records. (*Id.*) The payroll hours were compared to the hours in fringe benefit contributions "redeemed" by each of the individuals employed by J & A. (*Id.*) If the hours "redeemed" were less than the hours "audited," then an hour based difference was calculated. (*Id.*) In addition, an employer was also given credit for all fringe benefit contributions that were purchased but not redeemed. (*Id.*) Once the final differences were determined, the straight and double time hours were multiplied by their respective hourly fringe benefit rates in effect for the year of the audit. (*Id.*)

audited period of July 1, 2007, to June 30, 2009. (Pls. 56.1 Stat. at 2. ¶ 5; *see also* Statement of Damages ("Stat. of Dam.") at 1; Steinberg Aff. at 3, ¶ 6; Steinberg Aff., Agreed Upon Procedure Report, Ex. F, at 3; Keenan Aff. at 2; Quattalaro Aff. at 2.) The total amount owed consists of $35,764.00 in fringe benefit contributions for the audit period and $6,102.00 in interest owed on these contributions at the rate of 4.25%[2] per annum through the date that the final report was issued. (Stat. of Dam. at 1; *see also* Steinberg Aff. at 3, ¶ 6.)

In addition to the fringe benefit contributions and interest payment, Plaintiffs claim that additional interest, attorney's fees, audit fees, statutory damages and costs are due to Plaintiffs' Local 15 Trust Funds under the Parties' CBA and underlying Trust Agreements. (Pls. 56.1 Stat. at 2-3, ¶ 7; *see also* Stat. of Dam. at 1.) Specifically, Plaintiffs request $83.27 in additional interest on the principal sum for the period running from October 11, 2012, to October 12, 2012, pursuant to ERISA, 29 U.S.C. § 1132(g)(2)(B), and Section I and Section II, Subsection 3 of the "Collection and Audit Procedures." (Stat. of Dam. at 1; *see also* Steinberg Aff. at 5, ¶ 8(c).) Plaintiffs also request $6,185.27 in statutory damages in accordance with ERISA, 29 U.S.C. § 1132(g)(2)(C), (Sta. of Dam. at 1; *see also* Steinberg Aff. at 5, ¶ 8(d).), $5,425 in attorney's fees in accordance with ERISA, 29 U.S.C. § 1132(g)(2)(D), (Stat. of Dam. at 1; *see also* Steinberg Aff. at 5, ¶ 8(e).), $3,262 in auditor's fees in accordance with ERISA, 29 U.S.C. § 1132(g)(2)(D), (Stat. of Dam. at 1; *see also* Steinberg Aff. at 5, ¶ 8(f).), and $445 in costs and disbursements for this litigation in accordance with ERISA, 29 U.S.C. § 1132(g)(2)(D), (Stat. of Dam. at 1; *see also* Steinberg Aff. at 5, ¶ 8(g).)

---

[2] The interest rate to be applied towards the collection of delinquent contributions is set at 1.0% over the prime rate. (Stat. of Dam. at 1; *see also* Steinberg Aff. at 2-3, ¶ 5.)

4

J & A acknowledges that it is a party to the CBA, that the CBA contains certain terms and conditions regarding fringe benefit contributions, and that it is also bound to all agreements and declarations of trusts, amendments, and regulations referenced in the CBA. (Defendant's Rule 56.1 Statement in Opposition to Plaintiffs' Motion for Summary Judgment ("Def. 56.1 Stat.") at 1, ¶¶ 1-4.) J & A argues, however, that Plaintiffs' calculations are unreliable. (*Id.* at 2, ¶ 6.) J & A claims that the processes and assumptions used by Plaintiffs' auditors are questionable, and that there are real factual issues as to the sums claimed and owing. (Willdelaforcade Aff. at 6, ¶ 23.) For instance, J & A asserts that at least two employees that Plaintiffs claim are owed benefits actively deny such outstanding contributions. (Def. 56.1 Sta. at 2, ¶ 5.) J & A also contests Plaintiffs' claim that discovery resulted in modifications based on new numbers, primarily because all of the documents provided during discovery were available to Plaintiffs at the time of the initial audit. (Willdelaforcade Aff. at 3, ¶ 13).

### III. DISCUSSION

#### A. Plaintiffs' Motion for Summary Judgment

##### 1. Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a motion for "summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). The movant bears the burden of establishing the absence of any issues of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In evaluating a motion under Rule 56, the court reviews the "pleadings, depositions, answers to interrogatories, and admissions on

file, together with affidavits, if any," to determine whether or not "there is no genuine issue as to any material fact . . . ." *Celotex,* 477 U.S. at 322 (quoting FED. R. CIV. P. 56(c)) (internal quotations omitted). The court also reviews "the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. America Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998). However, a nonmoving party cannot rely on "conclusory allegations, speculation or conjecture" and "may not rest on the pleadings[,] but must further set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions showing a genuine issue exists for trial." *Cifarelli v. Village of Babylon,* 93 F.3d 47, 51 (2d Cir.1996) (*citing Celotex,* 477 U.S. at 324.). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249. Furthermore, "[i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

### B. J & A Remains Liable for Unpaid Contributions

#### 1. Negligent Contribution Under ERISA

"Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Generally, there are only two defenses a defendant may invoke in ERISA negligent contributions cases. First, a defendant may argue that the pension contributions themselves are illegal. *DeVito v. Hempstead China Shop, Inc.,* 38 F.3d 651, 653 (2d Cir. 1994). Second, a defendant may argue that a collective bargaining agreement is void, not merely voidable. *Id.* Additionally, plaintiffs are "not entitled to enforce a

6

nonexistent contractual obligation." *Id.* at 653-54 (citing *Teamsters Indus. Employees Welfare Fund v. Rolls Royce Motor Cars, Inc.*, 989 F.2d 132, 138 (3d Cir. 1993)).

Here, J & A does not assert either of the two abovementioned defenses. In fact, J &A does not dispute any of the legal standards articulated in Plaintiffs' motion. Rather, J & A acknowledges that it "entered into the Collective Bargaining Agreement and that it is bound to all agreements and declarations of trusts, amendments and regulations thereto referenced in the CBA." (Def. 56.1 Stat. at 1-2, ¶ 4.) Furthermore, J & A acknowledges that pursuant to the CBA, "it has a responsibility to pay fringe benefits to its employees in keeping with the hours worked." (Affidavit of Jack M. Martins in Opposition to Motion for Summary Judgment ("Martins Aff.") at 4, ¶ 19.) J & A disputes only the sum due, and owing and contends that it will not pay a second time for amounts already paid. (*Id.*) J & A thus concedes that there are no genuine issues of material fact regarding its liability for delinquent contributions.

J & A does not indicate what the correct amount due should be, but it asserts that the amount is "a significantly lower sum than reflected in any of the four audit reports." (Willdelaforcade Aff. at 5, ¶ 21; *see also* Martins Aff. at 4, ¶ 16.) J & A begins with a breakdown conducted in or around November 2010, by Josephine Barone, one of Plaintiffs' representatives. (Martins Aff. at 3-4, ¶ 15.) It matches the payroll breakdown to the audit period with the benefits paid for the same period. (*Id.* at 3, ¶ 15.) The breakdown shows two delinquencies from the payroll period from July 1, 2007, to June 30, 2008 – $7,742.27 owed to Local 15A and $25,117.23 owed to Local 15D, (Willdelaforcade Aff., Ex. E at 2.), – and a third delinquency in the period from July 1, 2008, to June 30, 2009, in the amount of $10,317.71 to Local 15D. Taken together, the breakdowns show that J & A owes a total of $43,177.21. J & A does not appear to take issue with the gross amount due, but claims that it is entitled to certain

credits.

J & A asserts, for, example, that the breakdown of payroll analysis identifies a credit due J & A of $23,407.34 because of an over redemption of stamps. (*Id.*) Although it is not entirely clear, it also appears that J & A believes that it should receive a credit for $12,614.06 for payments redeemed after a June 30, 2007 audit, but purchased before the completion of the audit. (*Id.*) Even if J & A were given setoffs for these credits, it would still be delinquent in the amount of $7,155.81. Since J & A has already admitted that it has a responsibility to pay fringe benefits, and since the Parties agree that there is some amount that is due and owing, summary judgment as to liability is **GRANTED** to Plaintiffs. The Court notes, however, that the Plaintiffs' affidavits suffer in their clarity to explain the stamp redemption process and the precise details of the Parties' dispute. A future award of damages will require Plaintiffs to submit a clear and step-by-step account of how they arrived at the amounts they claim are due.

### 2. Damages Should Be Assessed At a Subsequent Hearing

Generally, in determining damages, an evidentiary proceeding is required so that the court may ensure that there is a basis for the damages sought before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). In lieu of a hearing, a court may review detailed affidavits and documentary evidence. *See Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. The Parties have submitted affidavits in support of their damages calculations. Plaintiffs submitted an affidavit by Vincent Quattalaro, an audit manager at Armao, Costa & Riccardi, P.C., the accounting firm retained by Plaintiffs. (Quattalaro Aff. at 1, ¶ 1.) Quattalaro asserts that an audit of the payroll records was conducted on June 14, 2010, and based on that audit, J & A was found to be delinquent. (Quattalaro Aff. at 1-2, ¶ .) After three revisions, with the final

revision occurring after Quattalaro had an opportunity to review documents obtained during discovery, Quattalaro determined that the amount owed J & A in fringe benefit contributions and interest is $41,866.00. (Quattalaro Aff. at 2, ¶ 3.)

In challenging the reliability of Plaintiffs' calculations, J & A first points to the fact that Plaintiffs have issued four reports, each with a different amount allegedly due and owing. (Def. 56.1 Stat. at 2, ¶ 6.) J & A also maintains that Plaintiffs' calculations fail to give proper credit for contributions already made by J & A, fail to take into account certain facts such as their own members affirming that there is no deficiency in the contributions already made on their behalf, and, in general, fail to present a true and accurate status of the transactions between the parties. (Def. 56.1 Stat. at 2-3, ¶ 6.)

To support its position, J & A submitted an affidavit by its comptroller, Julia Willdelaforcade. Willdelaforcade challenged the suggestion by Quattalaro that his last revised report was made possible by documents exchanged during discovery. (Willdelaforcade Aff. at 3, ¶ 13.) She claims that the documents provided in the discovery were available to Plaintiffs earlier and had been referenced by the Plaintiffs' representative during the audit in June 2010. (*Id.*) In addition, Willdelaforcade asserts that the procedures used by Plaintiffs to determine the "credits for unredeemed hours" were arbitrary and were never clarified. (*Id.* at 3-4, ¶ 14). Specifically, Plaintiffs provided schedules detailing outstanding fringe benefit contributions to certain Local 15A and Local 15D employees for the period July 1, 2007, to June 30, 2009, in Plaintiffs' October 12, 2012 final revised report. (Mem. of Law, Ex. D.) J & A challenges the accuracy of the schedule, and identifies two Local 15D employees listed on the schedule, Bert Cummings and Thomas Perri, who provide affidavits that they were not owed any outstanding benefits. (*Id.* at 4, ¶16.)

9

Finally, Willdelaforcade questions the handling of two items in the Barone audit. First, she challenges the application of $12,614.06 in stamps purchased in July 2007. (*Id.* at 5, ¶ 19.) According to Willdelaforcade, an audit had already been conducted for the period ending June 30, 2007, and that any sums paid outside the audited period were properly credited to the period when purchased. (*Id.*) She argues that if the payments in the period after June 30, 2007, reflect the previous rate, the proper adjustment is the difference in rates between the pre-June 30th period and the post-June 30th period, not a wholesale discount of the entire $12,614.06. (*Id.*)

The second issue raised by Willdelaforcade concerns an "over redemption of stamps." (*Id.* at 5, ¶ 20.) She argues that J & A is owed a $23,407.34 credit for an overpayment of stamps, but Plaintiffs argue that an overedemption of stamps would preclude any credit. (*Id.*) Willdelaforcarde asserts that failure to recognize the credit will result in a $23,407.34 windfall for the Plaintiffs.

In sum, J & A argues that Plaintiffs have failed to provide an accurate calculation of what J & A owes, and requests that the motion for summary judgment be denied. (Martins Aff. at 4, ¶ 17.) In addition, J & A asserts that it has acted in good faith, and that the request for interest, statutory damages, or consultant's fees should be denied. (Martins Aff. at 4, ¶ 17.)

Given the discrepancies between the calculations by Plaintiffs and J & A, it is necessary that the issue of damages be addressed in subsequent proceedings. *See Trustees of Four Joint Boards Health and Welfare and Pension Funds v. Penn Plastics, Inc.*, 864 F. Supp. 342, 353 (S.D.N.Y. 1994) (summary judgment as to liability granted but denied as to amount in damages).

### 3. Prejudgment Interest Should be Addressed at a Subsequent Hearing

Plaintiffs also seek prejudgment interest in the amount of $6,185.27. (Mem. of Law at 9.) Plaintiffs claim that they are owed: (1) $6,102.00 calculated at the rate of 4.25% on the

principal sum of $35,764.00 through the date that the audit report was issued; and (2) $83.27 in additional prejudgment interest calculated at the rate of 4.25% on the principal sum from October 11, 2012, to October 12, 2012. (*Id.*)

Pursuant to 29 U.S.C. § 1132(g)(2)(B), "[i]n any action . . . to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . interest on the unpaid contributions." Further, 29 U.S.C. § 1132(g)(2) states that, "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . ." In this case, the plan provides that, "interest shall accrue on delinquent contributions from the due date at the prime rate plus one percent." (Steinberg Aff. at Ex. E, Section II, subsection 3.) Plaintiffs assert that the prime rate at the time was 3.25%. (Steinberg Aff. at 5, ¶ 8(b).) If one percent is added to the 3.25% prime rate, the total interest rate would equal 4.25%.

As a matter of law, Plaintiffs are entitled to interest on the delinquent contributions owed by J&A. *See Trustees of Four Joint Boards Health and Welfare and Pension Funds*, 864 F. Supp. at 348 (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 285 (2d Cir. 1992)). As the amount of delinquent contributions has yet to be determined, the issue of interest on delinquent contributions should be addressed in subsequent proceedings. *See Trustees*, 864 F. Supp. at 353.

### 4. Statutory Damages Cannot be Assessed at This Juncture

Plaintiffs also request $6,185.27 in statutory damages on the principal sum of $35,764.00. Pursuant to 29 U.S.C. § 1132(g)(2)(C), in delinquent contribution cases, a party is entitled to "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan . . . ." Here, neither the Trust Agreement nor

the Collection & Audit Procedures provide for a liquidated damages calculation. (Mem. of Law at 10.) Thus, Plaintiffs are entitled to an amount equal to the interest on the unpaid contributions. Since the amount of delinquent contributions has yet to be determined, however, it is appropriate that the amount for statutory damages be determined in future proceedings. *See Trustees of Four*, 864 F. Supp. at 353.

### 5. Plaintiffs are Entitled to Costs, but It Is Premature to Assess Audit and Attorney's Fees

Pursuant to 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to reasonable attorney's fees and costs of the action, to be paid by the defendant. Plaintiffs request attorney's fees totaling $5,425.00, audit fees totaling $3,262.00, and costs totaling $445.00. (Mem. of Law at 10 -11.) Plaintiffs' attorney's fees were determined by multiplying the hours of work Plaintiffs' counsel performed (17.5 hours), by Plaintiffs' hourly rate of $310. (Mem. of Law at 10.) The amount requested for audit fees represents the charges incurred by Plaintiffs' Local 15 Trust Funds for the field audit of Defendant's payroll records. (Mem.of Law at 10.) Plaintiffs' costs to commence this action were $445. (Mem.of Law at 11.) In addition, the filing fee was $350 and the service of process costs $95. (Mem.of Law at 11.)

#### a. Attorney's Fees

While an award of attorney's fees is mandatory under 29 U.S.C. § 1132(g)(2), the award must be reasonable. *See Klepeis v. J & R Equipment, Inc.*, No. 10 civ 363 (CS) (PD), 2012 WL 2849390, at *4 (S.D.N.Y. May 31, 2012). The reasonable fee is calculated by using the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Id.* Courts determine whether the rate and hours requested are reasonable by "bear[ing] in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as

12

relevant to the reasonableness of attorney's fees." *Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 118-21 (2d Cir. 2007)). These variables include: the novelty or complexity of the issue, the experience, reputation, and ability of the attorneys, the amount involved in the case and the results obtained, and awards in similar cases. *Id.* Additionally, a reasonable hourly rate is one that is consistent with the prevailing market rates in the relevant community. *See Trustees of the Empire State Carpenters Welfare, Pension, Annuity, Apprenticeship, Charitable Trust, Labor Management Cooperation, and Scholarship Funds v. Paramount CC, Inc.*, No. 11-cv-5715 (ADS) (AKT), 2013 WL 789317, at * 5- 6 (E.D.N.Y. Feb. 11, 2013). The relevant community is the district in which the deciding court is located. *Id.*

To determine whether the number of hours spent by plaintiffs' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law," and "exclude hours that [are] 'excessive, redundant, or otherwise unnecessary' to the litigation." *Id.* Here, Plaintiffs' counsel has submitted time records for 17.5 hours of work completed from March 2012 through October 2012. (Steinberg Aff. at Ex. H.) The records include Plaintiffs' counsel's time on this instant motion. (*Id.*) A review of the records indicate that the date, hours expended, and the nature of the work are recorded with sufficient specificity as to prevent a finding of vagueness. *See Taaffe v. Life Ins. Co. of North America*, 769 F. Supp. 2d 530, 543 (S.D.N.Y. 2011).

In addition, Plaintiffs' counsel's rate of $310 is in line with recent decisions on attorney's fees applications in ERISA cases in this District and Plaintiffs' counsel's experience as a partner at his law firm with close to 20 years of experience in this field of law. (Steinberg Aff. at 5, ¶ 9); *see, e.g., id.* (finding a $560 hourly rate reasonable for partner with 17 years of ERISA

13

experience); *Barnes v. American Intern. Life Assur. Co. of New York*, No. 8-cv-6222 (DC), 2010 WL 1253742, at *3 (S.D.N.Y. Mar. 16, 2010) (hourly rate of $495 reasonable for ERISA litigator with 29 years of experience); *Clark v. First Unum Life Ins. Co.*, No. 04 Civ. 9050(LTS)(DFE), 2009 WL 1150318, at *4 (S.D.N.Y. Apr. 29, 2009) ($480 hourly rate reasonable for partner). Nevertheless, the reasonableness of the legal services undertaken in connection with this litigation cannot be assessed without first determining the reasonableness of Plaintiffs' position regarding the sufficiency of its audit and its decision to subsequently pursue litigation. As such, Plaintiffs' requested attorney's fees, in the amount of $5,425.00 is **DENIED** without prejudice.

### b. Audit Fees

Audit fees are routinely recoverable in ERISA cases. *Trustees of the Empire State Carpenters Welfare, Pension, Annuity, Apprenticeship, Charitable Trust, Labor Management Cooperation, and Scholarship Funds v. Mitchener*, No. 10-cv-3030 (ADS) (ETB), 2012 WL 1899240, at * 3 (E.D.N.Y. Apr. 25, 2012). Although 29 U.S.C. § 1132(g)(2) does not specifically mandate the payment of audit fees, several courts have often used the provision in § 1132(g)(2)(E) to award reasonable audit fees. *See, e.g., Trustees of Operative Plasters and Cement Masons' Intern. Ass'n, Local 262 Welfare Fund, Annuity Fund, Pension Fund, and Apprenticeship Training Funds, et al., v. Mimosa Int'l., Ltd.*, No. 10-cv-2168 (DF), 2013 WL 1718913, at *9 (S.D.N.Y. Apr. 16, 2013); *George v. ECDO, Inc.*, No. 10-cv-1762 (DAB) (JCF), 2012 WL 3822230, at *3 (S.D.N.Y. July 30, 2012). The provision allows a court to provide for "such other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2)(E).

Plaintiffs detail the costs they have incurred during the June 2010 field audit of J & A's payroll records. While the amount appears reasonable, and the total amount requested is well

within the range of audit costs that have been deemed reasonable by other courts, *see e.g., Trustees of Operative Plasters*, 2013 WL 1718913, at *9 (awarding audit fees of $3,360); *George*, 2012 WL 3822230, at *3 (awarding audit fees of $ 3,055), it is unclear whether the June 2010 audit has been useful in resolving the current dispute. Accordingly, Plaintiffs' audit costs in the amount of $3,262.00 are **DENIED** without prejudice.

### c. Costs

Plaintiffs request reimbursement for filing fees and service of process fees. Courts have held that filing fees, among other things, are costs that can be awarded to plaintiffs. *See Trustees of Bricklayers*, 2005 WL 3789085, at *7 (citing *King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 171 (E.D.N.Y. July 13, 2004)). 29 U.S.C. § 1132(g)(2)(D) specifically provides for "costs of the action," and J & A does not contend that Plaintiffs' costs are unreasonable. Therefore, Plaintiffs costs in the amount of $495 is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment against J & A is **GRANTED** in part and **DENIED** in part. The Parties are directed to contact the Court to schedule an inquest hearing for the purpose of determining Plaintiffs' damages. *See Metzler v. Solidarity of Labor Organizations Health & Welfare Fund*, 1998 WL 477964, at *11 (S.D.N.Y. Aug. 14, 1998) (court ordered an inquest to determine the damages assessible).

**DATED: June 6, 2013**
**New York, New York**

Respectfully Submitted,

*/s/ Ronald L. Ellis*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

Copies of this Opinion and Order were sent to:

James M. Steinberg
Attorneys for Plaintiffs
303 South Broadway, Suite 234
Tarrytown, New York 10591


Jack M. Martins, Esq.
Attorney for Defendant
J & A Concrete Corp.
1676 Washington Avenue
Bohemia, New York 11716